The case we'll hear is United States v. Alvarado. And, uh, Ms. Harris. I'm sorry. I had to argue. I'm Ms. Harris, your name's not to be confused with Judge Harris. May it please the Court, I'm Andrea Harris, I'm with the Federal Public Defender's Office and I'm here on behalf of Mr. Alvarado. Um, in this case which was, is a distribution resulting in, distribution of heroin resulting in death, at the trial Mr. Alvarado submitted a proposed jury instruction to the Court that addressed both an actual causation as well as proximate causation. The actual causation instruction that Mr. Alvarado requested related to whether there's an intervening or superseding cause, but essentially it was relating to whether there was actual cause, actual cause, that the distribution resulted in the death. Um, and in our brief we've argued about both of the instructions, the actual cause instruction as well as the proximate cause instruction. With regard to the first, the key issue is not whether the District Court or the Government or even this Court believes that there is sufficient evidence to convict Mr. Alvarado. The issue is really whether the jury was properly instructed regarding the actual causation part of the offense, particularly in light of the Supreme Court's ruling in U.S. v. Burrage. And then the secondary question is whether the jury was allowed to... Burrage basically says the result from causation is nothing more than plain language. Right, but what Burrage makes clear is that contributing to the death, if the heroin contributed to the death, it's not sufficient. There has to be the but-for causation. The Court gave the statutory instruction and if the language is just plain language, you know, it's like beyond a reasonable doubt, judges have tried to instruct on that and most of the time they commit error. We have said, come close to saying that if you give, explain further than the words, plain words, you could be committing error. And that's exactly... Supreme Court said it seems to be saying results from, it means the but-for causation. Right, and that's the exact reason that the District Court did not... Gave that instruction. Right, and I think the Court stated at the time of our charge conference that a loose word on causation here or there can tend to confuse the jury. And I think if that... I think the jury just gave the statutory instruction. Right. That wasn't erroneous, was it? No, that wasn't erroneous. Well, obviously we asked for a clarification. We asked for further instruction beyond just the simple language to interpret the results. But you didn't ask for a but-for causation. No, no, we didn't phrase it exactly that way, but I sent... Those seem like really different things. Well, I think they were whether you call it but-for or you call it the intervening or superseding cause, the reason we asked for the instruction for some clarification is that there was evidence presented. First, there were evidence of other heroin sources and heroin sellers. There was evidence that had been presented that the deceased, Mr. Thomas, had contact with another person after the contact with Mr. Alvarado, the last contact with Mr. Alvarado, and that this was with Ben, a person named Ben. There's evidence that Ben sold heroin. There was evidence that Ben was also a source of illegal Xanax. So these were the reasons that we wanted that we asked for this instruction if there was an intervening or superseding cause, which essentially is just a but-for that the heroin distributed by Mr. Alvarado must be the cause of the death or what resulted in the death, as opposed to heroin or drugs he had obtained from some other source. And so that was the reason that we had asked for that instruction. And then the court refused the instruction saying, you know, I'm just going to simply track the language of the statute, you know, to start to try and define it as Judge Niemeyer said could lead to confusing the jury. We noted our objection at the time, but where the problem really comes in is that the jury twice asked questions regarding causation. Both juries? Both juries. And the first jury asked whether the instruction death resulted from the use of heroin means solely from the use of heroin or that heroin contributed to the death. Which is about 90% of Berridge. The jury was right spot on, right? And I think in Burridge the jury was explicitly instructed that if the heroin contributed to the death that would be enough. But I mean the holding in Berridge. The Supreme Court's holding. Right. And so this is the inverse. By not instructing the jury that they couldn't convict if they found that the heroin just simply contributed to the death, implicitly the jury was instructed that they could. So the instruction was incomplete. The instruction was incomplete. And that instruction... And by the way, you don't have to ask for a correct instruction on the law of the crime to have us notice the error. No. No. If the jury... That's the judge's job. Right. And if the jury was improperly instructed or if there was an omission or a misdescription, but if it goes to an element of the offense then it's a critical error. And that's what we have here. Here by not answering the jury's questions related to that element of whether contributing to the death is enough, the court essentially created prejudice because... ...distinguish this from the cases where juries ask what beyond a reasonable doubt. We've had a lot of cases in that area of means. And courts have traditionally said it means what it says. And you've got to do the best you can. That's what he said here. Results means what it means. Right. But the problem here, and I think the reason that this is different, is that results in death is an element of the offense. And at the time that we were debating these instructions, we knew that Burrage was pending. And so at the time that this jury question came out, the court had already indicated its intent to just instruct based on the statutory language and not stray from the statutory language for fear of creating more confusion. Understandably. Right. And understandably. The safe course for the judge is always the statutory language. Right. But then when Burrage comes out and it clarifies that that's not enough, the problem that we have here is that we don't know...so the jury's left essentially, because they're not instructed that contributing is not enough, they're left with two bases upon which they could convict. They could convict if they found that the evidence was sufficient independently sufficient or that the heroin distributed by Mr. Alvarado resulted in the death, or they could convict if they felt that the heroin contributed to the death. And so we don't know, based on the record, which basis the jury convicted because there was evidence that controverted. Now in the courts we asked for a reconsideration of the motion a new trial motion after Burrage came out. And in the court's opinion, the court justified its decision not to send it back for a new trial based on, obviously, that the jury was instructed on the exact statutory language. The district court also said, well, results from imports but for causality, so it's obvious. But obviously it's not obvious because it wasn't obvious to the district court and Burrage, it wasn't obvious to the Eighth Circuit, and then it took the Supreme Court to explain that. It's a factual question about the case, I guess. It seems like in this case, was anyone really arguing that the heroin wasn't a but-for cause? It seemed like there was an argument about whether heroin was the exclusive cause or whether the Xanax and the Benadryl also played a contributing role. But was anyone arguing? This seemed different from Burrage to me, just maybe that perhaps the instructions weren't all they should have been, but did it make any difference in this case? Because it didn't really seem like anyone was arguing that the victim would have died even if he hadn't ingested the heroin. No, I don't think there was any evidence that supported that, but there was an evidence that supported that he would have died just by the heroin alone. And I think that's sort of a key... But the heroin was a but-for cause either way, right? Either it was the exclusive cause or in combination with Xanax and Benadryl, it was necessary and sufficient. Right, there wasn't any evidence, there was no evidence presented that he wouldn't have died if he hadn't taken heroin. None of the... Experts said it was the heroin and without the heroin he wouldn't have died. Well, that was Dr. Suzuki, you're right. I apologize, you're right about that. But there was evidence, and that's... The evidence that I suggest that contradicts and supports our argument that you can't tell whether the jury just convicted him based on the heroin contributing is that there was evidence... The court relies heavily, obviously, on Dr. Suzuki's testimony and said Dr. Suzuki's testimony established but-for-cause. And it would have been sufficient under a proper instruction. Right, but... Under a proper instruction. There were a couple problems with that. One, I think that... The court also stated that Mr. Alvarado offered no evidence to contradict Dr. Suzuki's testimony. Of course, I think that ignores the government's evidence and a large part of that is the testimony of the decedent's girlfriend, Monica Shaughnessy, who testifies that... And this is on... During the government's case, I knew he overdosed on a mixture of Xanax and heroin. He had an amazing amount of Xanax and I knew he was going to get heroin that day. His new thing was to mix them together and that will kill you and he knew this. And that was the government's evidence about that. Doctor... I feel like I'm just totally missing something, so please set me straight. Isn't even under that, the girlfriend's testimony, the heroin is a but-for-cause, right? Under that... Well, under that statement, the heroin obviously contributed to the death. She's not saying he would have overdosed just from the Xanax and the Benadryl. She also testified that he used heroin hundreds and hundreds of times and he never had a problem. So that's why I don't concede that the heroin was a but-for-cause or that the evidence is conclusive that the heroin is a but-for-cause because he had used heroin hundreds and hundreds of times, he was a regular heavy user, used... Right, so I thought your theory at trial was it wasn't just the heroin, the heroin alone would not have killed him. It had to be mixed with the Benadryl and the Xanax, but it's still a but-for-cause. The Benadryl and the Xanax at therapeutic levels alone would not have killed him, right? Well, there was no testimony about what would the impact have been if he had only taken the Benadryl and the Xanax at those levels. There wasn't any testimony regarding that. No one ever argued... They argued that they were at therapeutic levels, but they didn't argue... In my testimony, I can remember the experts saying it was the heroin that did it. Right, right. Dr. Suzuki did testify to that, but she didn't testify that he wouldn't have died if he'd only taken the heroin, I mean the Xanax and the Benadryl. But the bigger problem is that the jury wasn't properly instructed, and Mr. Alvarado... They were properly instructed. They weren't given a further explanation as to but-for, but they were instructed exactly the way the statute provides, and the Supreme Court said that language is the ordinary language. And they said if Congress wanted to include contributing, then Congress would have said so. In the absence of that, we give it its ordinary meaning. That's a buried statement. Right, but... And I think we would be dead in the water if the jury hadn't specifically asked the questions whether contributing to the death was enough, because clearly the jury was asked some questions about whether the heroin was the but-for cause, and of course the jury is... They're the ones who get to decide. Well, Judge Harris's questions lead to the question, what difference does it make in view of the evidence? Well, I think the difference that it makes is that it's the jury's province to decide that and to be properly instructed. Well, they weren't improperly instructed. I mean, that's... You conceded they were properly instructed. They were not given the but-for explanation. Right. Okay, that's not an error. There's no case that has held that. No, but the failure to clarify created the prejudice here, because it didn't... It allowed them to believe that they could convict based on the contributing. But I guess it's a lay jury... I don't want to harp on this anymore, but I am genuinely trying to wrap my mind around this. So it's a lay jury, and so I understood the question to mean they're sort of tracking the evidence in the case. You've got this one witness who says it was just the heroin. That's the exclusively. You've got another witness who says, well, and the girlfriend, it was the heroin in combination with the other things. That's the contributing. But even under the contributing theory, it's a but-for cause. So I just don't understand why it mattered in this case. I totally see that in some other case, this instruction would have been very prejudicial. But I don't understand why there is no theory in which it is a contributing non-but-for cause. Well, but is it but-for the heroin he would have died, or but-for the Xanax and the Benadryl he would have died? Dr. Burroughs testified that they're all central nervous system depressants that have a synergistic effect. So was it but-for the heroin, or was it but-for the Xanax and the Benadryl? And so that's I think the question. In the Xanax, it's clear it was purchased illegally by somebody else, from somebody else, not from Mr. Alvarado. And although, if we were talking about just a sufficiency argument, I think we lose, because there was evidence that was sufficient to find him guilty under the but-for standard. But that's not what we're talking about. That's not the standard that we're looking at here. I think I'm out of time. Thank you. All right. Ms. Wright. Thank you, Your Honor. I'm Elizabeth Wright, Special Assistant U.S. Attorney for the Western District of Virginia on behalf of the United States. May it please the Court. Mr. Alvarado raises no legitimate challenge to the jury instructions or the relevant evidentiary ruling in this case. First, on the issue of the jury instructions and causation, the District Court correctly instructed the jury in the statutory language for the sentencing enhancement under 21 USC Section 841b1c. As the Court's questions noted, the Supreme Court in Barrage held that results from, by its ordinary meaning, imports, both being an independently sufficient cause of death or serious bodily injury, and being a but-for cause of death. So we know exactly what the jury here decided, and there was no instructional error in the first instance. The language that the Court uses was and remains an appropriate statement of the controlling law. There was no obligation to provide the elaboration. We really think it is similar to getting into the dangers of elaborating on beyond a reasonable doubt. And this instruction remained throughout entirely proper in Mr. Alvarado's case. There are two dispositive points that differentiate this case from situations that could cause a problem under Barrage. One distinction is legal, and the other is factual. And after I talk about those, I also do want to make a note about the standard of review in case the Court does find that there was some error here. So on the first distinction in Barrage, the problem that the Supreme Court addresses was that the jury was explicitly instructed that having a drug only as a contributing cause was an acceptable basis to convict. That meant that the jury was explicitly given an incorrect statement of the law, and that's what led to the error under Barrage. In Mr. Alvarado's case, the jury was properly instructed in language that... But the instruction in Barrage wasn't incorrect. It was given. Do you agree? Well, the instruction when it was given differed from what Fourth Circuit law was. But it wasn't incorrect in the Sixth Circuit, was it? Well, I guess in the Eighth Circuit, it was incorrect, Your Honor, based on the plain meaning of results from. But we didn't know that until the Supreme Court told us that. I think we did know that, Your Honor, because just reading the statute, results from means but for cause. And the Supreme Court is really clear on this, and it's important that they said multiple times that the ordinary meaning of results from imports but for cause. They said that... Imports. You see? Imports. I mean, it's saying that this is the way people would understand the term results from. Not Justice Ginsburg. Justice Ginsburg concurred in the judgment in the Supreme Court. And she was referring to... Because of, Your Honor. And the rest of the Supreme Court, I mean, she concurred in the judgment. She agreed the Barrage was turning out as it should. Because it's a criminal statute. She didn't use the term, but it's inherently ambiguous. I think, as I recall the concurrence, she was referring to the because of term used in other statutes. Right. She was drawing a distinction between because of and results from. She didn't create an ambiguity. I agree, Your Honor. We can't give the text any meaning other than its ordinary meaning, which was but for cause. That's what she said. Thank you, Your Honor. And the Supreme Court said, I mean, multiple times on pages 887 to 888 in Barrage, that we are, by importing the but for cause, saying exactly what the terms results from mean. They say that Congress, instead of using contributing language, quote, chose instead to use language, again, that imports but for causality. So after Barrage, the Department of Justice has not given instruction to the U.S. Attorney's offices around the country as to what kind of jury instruction to ask for in one of these cases. Is that what I'm left to believe? The Department of Justice, the good lawyers at the Department of Justice read Barrage and say, oh, no problem. There's no news here. No news here. I think it depended on the circuit, Your Honor, because there were circuits that, before Barrage, were not imposing the but for construction. But the Fourth Circuit was imposing that, and that's what the Court followed in this case. And it's important to note that the plain meaning of results from did not change with Barrage. The government in Barrage was arguing that the plain meaning, based on policy considerations, was unduly restrictive. In essence, the government's position in that case was saying that, well, that we accept that this is a plain meaning, but here's how it should be interpreted based on the context of the statute. And the Supreme Court said, no, the plain meaning is a plain meaning. We need to look at results from based on how ordinary persons can comprehend it, and that's on page 891 to 892, and it said that but for cause is how ordinary people comprehend it. So that's how we know that the jury comprehended it in this case. How do you account for the questions in this case? Well, first I want to note that there was only one question. I think it's really misleading. Well, it was repeated. But it wasn't answered the first time. It was only repeated. And it wasn't answered the second time. That's why we're here. There was no response whatsoever the first time. There was a separate issue that arose with the juror that led to an alternate being called up. So it's deeply misleading to say there were didn't, I mean, everything was called off, the jury started again, and then they happened to ask the same question that the prior jury had asked. But this was not multiple questions. There's also no indication whatsoever of any actual confusion by the jury. They proceeded to verdict. After they got the non-answer, they proceeded to verdict within about 20 minutes. It was fast. And relevant to the standard of review, it's also important to note that when that question came in, because when the first question came in from the first jury, and then when the first question came in from the second jury, the defense agreed that no additional instruction should be given. So are you arguing waiver or something? The review should be plain error. If the court finds any error, the review should be plain error. So you've got plain error and you've got harmless error. Now, can you at least answer my question? What do you make of the jury's question? If it's so clear that results from means what Burrage says it means, why did the jury ask that question in the face of the evidence in this record and the instructions that the court gave the jury? We don't know, Your Honor. And any conclusion as to it is purely speculative. It could be one juror just happening to want to understand that better. There's no indication here of confusion whatsoever. And one of the reasons, additionally, that that's true, Your Honor, is that the arguments are... In other words, 11 jurors could have been saying, oh, so long as it's part of what he died from, that's okay. And one juror is thinking, no, plain meaning of this term seems to be sort of but for. I'm saying the opposite, Your Honor, because the jurors, I'm saying the one juror could have been wondering, oh, well, we heard some commentary on contributing cause and other things, and how does that relate? And trying to understand that. I mean, the point is there's no way to really conclude anything from this single question. And in the context of the case, there was no ambiguity at all as to what the jury was supposed to decide. The government, in its arguments, was always approaching this as but for cause. The defense, even in its closing argument, said the question you need to determine is whether the heroin caused the death, whether the Xanax caused the death, or whether they both caused the death. The defense was very clear that if you're going to answer that the heroin caused the death, you're rejecting this other evidence about these causes. That's in the J.A. at pages 717 and 718. So in any event, that would have cured any potential confusion that could have arisen in this case based on the different evidence. But we think with the language on the verdict form that clearly was phrased in terms of whether death results from the heroin, there could not have been any confusion here. The case here is really different also. We think the first distinction is that there was no legal error in the court's jury instruction. The second distinction here is that the facts plainly established both that heroin was an independently sufficient cause of death and that it was a but-for cause of death. Through the testimony of Dr. Suzuki Can I just ask you one last question? If we were to find error here and notice it and find that it was prejudicial, the defendant wouldn't be entitled to a new trial altogether, right? We would propose a remand for further proceedings. And you would have the option, am I correct, that the government would have the option of doing a resentencing without the enhancement? Is that right? That was an issue that caused a problem in some other cases that really weren't sure about how to do a sentencing hearing. I think that came up in McKay and elsewhere. So I think that's something that would have to be appraised if this were sent back down. This is not an element. It seems to me you'd have to have a new trial if this is an element, wouldn't you? I mean, I guess I guess the argument could be, I suppose, it's sort of strange if you would concede away an element which enhances the penalty. So you think it would have to be a new trial altogether? No, I'm asking counsel. I think that would have to be appraised depending on what exactly happened in the court's decision. I think that here, I mean, there was obviously no, well, I mean, there's no real dispute, we think, about the distribution. At the same time, I mean, it is something that we just need to think about if it ends up going back down because we still think there was no error here. Wouldn't the distribution be unnecessarily lesser included? It is, Your Honor. Yeah. And so, theoretically at least, you could proceed to sentencing on that. Well, but you would still, under, I think, the court's construct, you would still need a jury determination under the correct legal, I mean, if you think that the view is correct. On the causation? Yes, on the results from element. I don't think our judges would reason. Why would you need, I'm sorry, why would you need, to do a sentencing on the distribution, why would you need a jury determination or any determination on causation? Well, to do a sentencing on the case, you would need to have a jury determination on, I may be misunderstanding the question, and I apologize. Why would you need to do a sentencing on the lesser included is what I'm asking. But that would not be where we should be ending up. I understand, but. Because you proved the greater offense, so there's, I mean, there's no double jeopardy issue. We would be entitled to go through and prove again the full offense. Oh, sure. And that would obviously be. Of course, you have a right to proceed with the new trial. My question, I'm sorry I dragged this out, but could you, if you chose to, without objection, proceed to sentencing on the lesser included on the basis of this jury verdict? I think that, yes, that would be within the court's power, but I think it would be. Well, the government's power. Well, yes, I mean, yes, the power of the government upon remand to have that kind of proceeding. But I think it also would be equally in the government's power to, I mean, have the retrial or do other kinds of resolutions. And I'm sorry, I didn't mean to distract you. I think you wanted to talk about either waiver or plain error or harmless. Or perhaps all of the above. I'll try to get to as many as I can, Your Honor. The point on waiver, I do want to emphasize that the, well, I guess I'll return to the facts since that thing's more relevant right now. The testimony of Dr. Suzuki, she did testify that without the heroin he doesn't die. And the heroin back in, does that cause his death? Yes, it does. So she was, I think, very clear that, first of all, there was absolutely no contribution in her view from the Alprazolam and the other drug. And also that there was no possibility of death without having the heroin. And the way the defense is phrasing the test, I think, really perverts what the legal standard is. The question under Barrage is whether the charged drug is a but-for cause of the death or serious bodily injury. You cannot phrase the test properly in terms of whether, well, but if you take out what the other drugs were, what happens? You have to phrase the test in terms of without this charged drug what would have happened. And the Supreme Court in Barrage talked about that and this is a quote that's pretty important, that's saying that where A shoots B who is hit and dies we can say that A actually caused B's death. Since but-for A's conduct, B would not have died. The same conclusion follows if the predicate act combines with other factors to produce the result so long as the other factors alone would not have done so. If, so to speak, it was the straw that broke the camel's back. And then it's talking about so if you give poison to someone who is debilitated by multiple diseases, it's a but-for cause of his death even if the diseases played a part in his demise as long as without the incremental effect of the poison he would have lived. So we think it's really important here that the Supreme Court used that language. It referred to whether the drug charge was an A but-for cause of the death and all the wording is in terms of this drug. It does not matter if these other drugs contributed. It only matters is if you took away the heroin would he still be alive? And that is truly uncontroverted here and Dr. Suzuki's testimony is plainly clear on this. It's also a major distinction from Barrage because the cases that have, again, caused any issue have either had the incorrect legal instruction or the facts in the cases have plainly not met that standard. They've had sort of indisputable, like in Barrage, in McKay, in Pena it was clear in the evidence that that standard was not met, that there was only a contributing cause that was in play. So if you apply the correct test there's no way to find any error at all in this case. The test also from Nader, and it's important to note that jury verdicts can stand even if, and Nader was dealing with this, there was no instruction at all on the whole element. Here the element was plainly presented to the jury and we'd still think that the instruction on that element was correct. The question is whether there's anything that really undermines confidence in the verdict and under all the facts here, with the uncontributed medical examiner's testimony about this, and she was the only medical professional in this case anyone with medical training at all, you would have reached the same result. The Nader test doesn't impose as high a standard and really goes out of, as I think Judge Davis' questions were suggesting, and in fact goes out of its way to say that it wouldn't be efficient to get rid of verdicts if we can tell exactly where we would have ended up anyway, and that there are all sorts of errors in instruction that are no, that don't require any correction, that aren't ultimately problematic. That's why we get into the harmless error review, and then here again I think plain error review, because when the question came up, with the jury question, the defense agreed that there was nothing appropriate for the court to say, and Ms. Harris sort of led with this, but it's also notable that the instruction that the defense submitted to the court was not a correct instruction. It included foreseeability as a requirement, which is forbidden by a Fourth Circuit precedent. It did not include all parts of what Barrage explained was independently sufficient cause of death, or a but-for cause of the death. And it introduced other really confusing terms. It started using phrases that were undefined of contributing causes and intervening causes, without saying what those were, and without saying what the jury should have done if it did find those. So there really wasn't any sort of solution that could possibly have constituted an abuse of discretion for the court to reject. It proceeded in what was the appropriate response based on Fourth Circuit law that was binding, and remains binding, that you need to show but-for cause. It instructed in the statutory language, which is where all the elements and everything else flow from. And that was truly, we think, the appropriate response, and would have been the same law even after Barrage. So there was no error in any manner, we think, here. I'll also note just briefly on the foreseeability. Multiple circuits hold that there's no foreseeability requirement. I did just want to touch on that. On the Confrontation Clause, Issue 2, just so we've mentioned it, there really was no error at all here in the admission of these statements. I think the only issue that the defense raised at all is whether these were truly against the penal interest of Mr. Thomas at the time he said them. And a point that I wanted to raise in light of the defendant's reply on this is that Mr. Thomas was making these statements to someone that he was distributing heroin to. So it's really incorrect to say that this wasn't something that would subject him to co-conspirator liability. It's not required that it would subject him to co-conspirator liability, but it also wasn't true here because he was sharing it with her. So the test, I think, is fully satisfied on the hearsay issue, and there's no Confrontation Clause issue as well because these statements were not testimonial. One very quick question, and it's semantic, but I'm just trying to sort it through for myself. If hypothetically I were to agree that because the only evidence in this case was that the heroin was either independently sufficiently caused or a but-for cause, there's not a problem in this case. Am I thinking about that as well? At least in this case, the instructions were in fact adequate. On this record, these instructions were adequate. Or is that more like a harmless error? Well, maybe the instructions were wrong, but it's harmless error. Or maybe you think it just doesn't really matter, which would be fair. I think the instructions were correct. I think that if the court were to find an error in the instructions, then it would proceed to the harmless error review. But I think the instructions were correct, sort of overall legally and based on the facts in this case. And if you get to harmless error review, then, yes, you get in more detail as to what all the evidence was, looking at Dr. Suzuki's testimony where she made clear that either prong of Raj was plainly satisfied, and there was no medical evidence at all controverting that. Thank you. A couple things I want to respond to. First is, with regard to the witnesses and the evidence that's presented, Dr. Suzuki was not a fact witness. Her testimony that her belief that the heroin was the but-for cause of the death was an opinion. It wasn't a fact. And it's an opinion that the jury was entitled to whatever weight they wanted to give to it. And I think the fact that they were struggling with what weight to give to that opinion is evident in the question about whether contributing to the death was enough in light of Monica Shaughnessy's testimony, in light of Dr. Burrow's testimony, which conflicted to a large extent with Dr. Suzuki's testimony. And so I think it's important to keep that in mind. The jury was instructed that her testimony was an opinion and that they were entitled to give that what weight they wanted to give to it. And that's why it's critical that they're not given while the initial instruction tracked the statutory language and was correct as far as it did that, the error is in not correcting their misconception when it's clear that they're confused about what that means. With regard to waiver, this issue is not waived. We agreed that the court agreed with the court's decision not to instruct further when the jury came out with those questions. But that was in the context of the fact that we had asked for specific instructions on causation, actual and proximate causation initially, and the court had stated its intent to distract the language. And we all were very well aware of Burrage being pending in the Supreme Court at that time. And we were very well aware that the instruction there was whether contributing to the death is enough. And so obviously the government's answer to that question by the jury would have been yes, in light of the Eighth Circuit and the District Court and Burrage, yes, contributing is enough if that results. And of course our answer would have been no, contributing is not enough. And so that was the dilemma that was left to the court at that time. Well, what would the answer be? I guess on the plus side, there was some chance that the jury said, does it have to be the exclusive cause? I can think of all kinds of reasons why the defense wouldn't have objected. Maybe the jury's going to think it has to be the exclusive cause and there's at least some evidence that it wasn't the exclusive cause. Who knew whose favor the confusion would work in? Well, but that's where we are now with the confusion. We don't know what basis the jury made their decision. With regard to the instruction on foreseeability, and obviously we didn't have very much time to get into that second issue, I would argue that this issue is not resolved by Patterson because Patterson's distinguishable. Patterson was decided in 1994 and it related to the death results language as sentencing enhancement, as opposed to an element of the offense, which of course it is now. And I think there's a different standard and a different weight that those two things are given, whether they're elements versus sentencing enhancements. That's a critical distinguishing difference between Patterson and which is why I think that Patterson isn't necessarily precluding this court from considering the issue. As I was preparing for the arguments today, yesterday I went back. The instruction that was with the slight tweak on the actual cause, but the foreseeability part of the instruction that we proposed was the instruction that the government asked for in the case of U.S. v. McKay, which was the Tenth Circuit case out of Utah. That foreseeability instruction was asked for by the government. In fact, as I was reading through the materials yesterday, I looked back and I learned that the government had filed a memorandum of law in support of their foreseeability instruction and they cited a number of results, cases, other federal statutes that use the same results in death language that do require a finding of foreseeability, including a Fourth Circuit case, and I didn't cite this in my brief, but the Fourth Circuit case of U.S. v. Harris. Too many Harris's in there. I know, but this is a 1983 case and it's a case dealing with 18 U.S. v. 241, which is if you deny persons any rights guaranteed by the Constitution or the U.S. laws, it's a violation and there's a sentencing enhancement if the deprivation of rights results in death, and in that case, the Fourth Circuit held that death must foreseeably naturally result from the rights violating conduct. So I do think that there is some precedent with this same language, not necessarily on the distribution of drugs offense. May I ask you, Ms. Harris, your time is up. Am I correct that this is not a friendly question, I admit. Am I correct that at least theoretically, we could find error here with respect to the 20-year mandatory minimum, but theoretically, the case could go back, proceed to sentencing on the lesser included, and at least theoretically, your client could still get 20 years. Right. The court would, I mean, the minimums and the maximums would come down. But the maximum is still 20 years. Right. Right. So, yes. I mean, it would be a departure or variance. Right. The court, yes, absolutely. And I think, well, my time's up, but thank you. Thank you. We'll adjourn court sine die and come down in Greek Council.
judges: Paul V. Niemeyer, Pamela A. Harris, Andre M. Davis